First case for argument, case number 24-3475 from the Southern District of Iowa, Jason Onemus et al. v. Telephone and Data Systems et al. Okay, and Mr. Schoon. Good morning, your honors. And may it please the court, Paul Secunda for the participants, Mr. Ohnemus and Ms. Payne, may I reserve two minutes for rebuttals, your honor? You may. Okay, thank you. This appeal asks whether the district court applied this court's pleading standard for ERISA excessive fee fiduciary claims or instead imposed a new heightened high bar rule that appears nowhere in Braden, Miners, Davis, Matusik, or Barrett. It also asks whether the district court resolved disputed fee facts through a Form 5500 gloss. The district court dismissed only after announcing a high bar for comparison claims. Counsel, this is Judge Smith. Let me ask you, other than using that phrase, high bar, what in the record demonstrates the court actually imposed a higher standard? Yes, your honor. In addition to the high bar, the evidence that a high bar was actually applied was in the manner in which the judge used the Form 5500 forms by defense counsel. In particular, your honor, that is, the district court took judicial notice of those forms, which is fine. We're not upset with judicial notice. What we're concerned about, your honors, is that they took judicial notice of reasonably disputed facts and then chose to credit appellees' Form 5500 math over our 404A5 fee disclosure allegations. Are any of those essentially inconsistent with applying the appropriate standard? Yes, your honor, because the appropriate standard is a meaningful benchmark. And what the district court essentially held was that a meaningful benchmark must be based on Form 5500. It didn't say that, though, right? It didn't say that.  But in fact, both Matusik and Barrett were decided based on Form 5500. Your honors, what we did is we very purposefully did not rely on 5500s because of the interpretive problems with those forms. They are forms that are filled out in a very imprecise way. Under penalty of perjury. Under penalty of perjury. Yeah, go ahead. But there is no one way. It's more of an art than a science, your honor, these forms. Well, speaking of more of an art than a science. Yes. How many of these kind of funds are there, counsel? I think somebody says there are millions and somebody else said there are thousands and somebody else said hundreds of thousands. Yeah. Does anything in the record indicate how many of these there are? How many funds are 401K plans, your honor? I mean, 401K is kind of like this one. Yeah, like this one, not many because it's such a large plan, your honor. It's probably in the 0.1%, I believe we alleged in our complaint. Okay, well, the 0.1% would be how many thousand? Yeah, I would say as far as comparable plans to this plan, it's not in the thousands. It's probably in the tens or the hundreds, your honor. Because of the size of the assets, because of the size of the purchase. You brought up art and science and I couldn't resist. I couldn't resist asking. A scientist would say there has to be some sort of sampling with some sort of confidence and that kind of thing. And not just cherry picking, I'll use that term, certain other plans and comparing them to this one. And there have to be more science to it than a lot of these petitions present. How do you respond to that point? I respond by trying to rely on a form that is more science and less art, your honor. I try to rely on the financial disclosures which participants receive from the plan. And therefore, I would argue that the plan administrator is held to. Okay, and how many of those do you have to have? I kind of agree with you on that. But how many of those do you have to have? That's what always troubles me is you pick four or five or six. You have six, right? Yeah, we have six. Yeah, you have six. But you pick four or five or six and I think there may be, you even say, don't worry, you and I are just taking hypothetically that number. I'm not going to hold you to it in regard. But there are those. Why don't we have all those or a significant percent of those or an expert who says something like this? Because in a couple of these cases, they have had experts, right? After the pleading stage or before the pleading stage? I don't know. Well, that's a good point. Well, and that's the point. Rule eight, your honor, right? I mean, certainly, yeah, rule eight, short notice of what you're entitled to relief. But plausible. But plausible under Iqbal and Twombly, correct? And based on the common sense of judges and what you think is plausible. Absolutely. And what we're saying is the defendant slash appellant or appellees, excuse me, put a gloss on form 5500 forms that we didn't even have in our complaint. We put a gloss on 404A5 forms and what we said is those 404A5 forms plus the financial audits, which are also signed, of course, under perjury. Yes, sir. And we looked at what we considered the fungible and commodified nature of these forms. We looked at the 404A5s and we said there's nothing customized here. There's nothing unique here. There's nothing exceptional here. This is the same bundle of recordkeeping services that plans of this size, which we call mega plans, more than $500 million in assets, your honor. This is.  Yes, your honor. Your use of that term fungible, is that a term of art that's used in this industry to refer to these or is that a characterization? That is a characterization, your honor, based on allegations we made in our complaint that indeed when you look at bundled recordkeeping and administration fees, and I know this court is fond of supermarkets and food with the grocery baskets and all that. So I'm going to say this is like a buffet. In other words, I can get the bacon, I can get the eggs and I can get toast and I'm going to pay $10. Your honor, you might like something different. You might want cereal and a muffin and whatever juice is your favorite and it's still $10. And that's what we're saying here. It doesn't matter what you select as far as your recordkeeping services. You're still going to pay the same amount. And so our allegation is if you look at the disparity between the six plans that we chose, and we chose them not cherry-picked. We picked them because they essentially are the closest in number of participants and the number of assets, and those are the two numbers that make the most difference when we look at how you charge what you want to charge for recordkeeping services. And so when we take the 404A5s, we take the audited financials and we consider the fungibility of these types of services, we believe that we have made out a plausible benchmark. Your honor, I want to read something that I wouldn't usually bother the court with, but I just think it's so fundamental here. I think Brayden, which of course is the first in the line of these cases back to 2009, is extremely important here. And this is what they say. And I'm quoting here from Brayden v. Walmart Stores, and you can find it at 588 F. 3rd at 597. This court here said, Not every potential lawful explanation for the defendant's conduct renders the plaintiff's theory implausible. Just as a plaintiff cannot proceed if his allegations are merely consistent with the defendant's liability, so a defendant is not entitled to dismissal if the facts are merely consistent with lawful conduct. I'm going to skip a few sentences, and then it says, Requiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the non-moving party. And then it talks about Iqbal and Twombly. So, your honors, what I would argue, and by the way, this is a point that was adopted by Chief Judge Schultz in a case called D'Anzio v. U.S. Bancorp. That is at 2024 Westlaw 1216519, District of Minnesota, in 2024. Under material similar circumstances, in response to the same line of questioning that I am engaged with with you when I was standing in Minneapolis, he said, Plaintiffs made just such a comparison bolstered by additional allegations regarding the fungibility and commodification of record-keeping and administrative services. And these allegations make it unnecessary to compare individual services to individual services because all record-keepers provide the same bundled services. And the total price of the bundle remains the same no matter which of the individual services within the bundle a mega plan chooses to use. And that's at D'Anzio pages 2 to 4. So, your honors, I believe that the error here and the high bar can be seen in practice. Because I know appellees say, well, she said high bar, but she didn't apply it. Well, she actually said relatively high bar. So, see, that's the thing, is if you look at what she said, it strikes me as really pretty harmless as an old trial judge. You know, we characterize what people are saying pretty frequently as, yeah, it looks like there's a relatively high bar that's applied here, blah, blah, blah. And that doesn't mean we've stated the standard because usually a judge, when they state the standard, they said the standard that we're going to apply is X, you know, if that's in there. And here, of course, that's not in here, and that's where the argument flows. And so I think it's far more important to focus not on what the judge said as on what the judge did, right? I agree, your honor. And so I don't consider the high bar to be dispositive here. I think it's indicative of what the court did, which is that it applied the wrong standard by deciding to take an inference against us, the non-moving party, which Braden says you can't do. And there's a good reason, your honor, that you're not allowed to do that, which is what Braden says, which is we, the plaintiffs' appellants, do not have in ERISA cases the information which you might later get in discovery, things like service contracts and pricing schedules. And then it's the discovery that would test the service, you know, level details. So what we're suggesting here is that even though appellees say our numbers are understated, the district court said our analysis was incomplete, we failed to take up certain arguments that she made, our response is we did not need to speak about total fee, in quotation, allegations in Form 50-100. We were permitted to use 404A-5 disclosures, which are participant-facing ERISA-mandated fee disclosures, unlike Form 50-500s, which are aggregated and I would argue require interpretation. So we don't have to plead total fees. All we have to plead is a sound basis for comparison. Disputes about whether an accounting source captures total compensation, we would argue are merits issues. Also, the complaint alleges considering indirect and direct compensation, which is something that Pelley said we didn't do. Your Honors, I suggest that, in addition, appellants will likely bring up extras that are included, but those extras are something that require us to have discovery to test and requiring that detail now contradicts. We can't tell at this point what's spent on basic record-keeping services, right? Well, they can. They have the documents. They can tell us exactly what the record-keeping services are. From the appellant's standpoint, the reason that this line of cases, going all the way back to Braden, allows us to infer a flawed process is because we are missing, do not have those documents that are solely in the possession of the other side. Your Honors, I'm going to reserve two minutes. Thank you very much for your time today. Mr. Delaney. Good morning, Your Honors. May it please the Court. William Delaney from the Groom Law Group on behalf of Telephone and Data Systems and its board, which I will refer to, as we did in the briefing, as TDS. With me is my colleague, Caroline Wood, also from the Groom Law Group. Your Honors, no one disputes the standard here, and I think it's worth just reminding the Court, there's this notion of disparity of information. That's all been taken into consideration in the Court's articulation of the standard. The standard most recently comes out of Matusik from this Court and Barrett. These are 2020 cases in the years 2020-2024 for one, 2022, I think, for the other. This is not going back to Braden. So we have recent pronouncements from this Court that established the standard. To plausibly allege that there were excessive recordkeeping fees paid to a recordkeeper, the complaint must allege a meaningful benchmark, a sound basis for comparison. That is the standard that equalizes that disparity of information that my brother referred to earlier. Boiled to its core, similar plans offering same services for less. The District Court here made its determination on the for less prong of that standard. I point that out, Your Honors, because to reverse the District Court judge, this Court would have to go counter to Matusik. Now, this is a de novo standard, so this Court can assess this based upon the similar plan issue and also based upon offering the same services. If the Court were to actually reach those issues, then this Court is controlled by Barrett. Matusik and Barrett control this case. And those cases dictate affirmation of the District Court's ruling, number one, and number two, the dismissal of this complaint for failure to plausibly allege a cause of action. And, Your Honors, if you have any questions on me, I view my job here as to add clarity. Okay. Well, let's begin with an obvious one for me. The last time the Supreme Court has spoken on this is the Northwestern case in 22, right? That's correct, Your Honor. Okay. Is there anything on their docket or coming up on this that you're aware of? Not that case, Your Honor. I will say, though, in full disclosure to the Court that there are two cert petitions that are currently before the Court asking for certiorari. One is Park Hanifin. The other one escapes me, but Park Hanifin is the one that's out ahead. The Court has asked for the government's position in those cases, and that case will set up this meaningful benchmark issue at the Supreme Court, but that is just at the cert petition stage. Thank you. That's exactly what I was asking about. And relatedly, are either of those a Sixth Circuit case? The Parker Hanifin case is out of the Sixth Circuit, Your Honor. Does the Sixth Circuit have a different standard than we do? It does, Your Honor. Okay. And that is what's teed up. The Sixth Circuit decision did not require the pleading of a meaningful benchmark to establish a plausible cause of action, the line between possible and plausible. Counsel, this is Jed Smith. How does the plaintiff's pleadings in this case come short of identifying a meaningful benchmark? Your Honor, it falls short because it relies solely upon comparators to attempt to cross the line from possible to plausible. And to do that, it must meaningfully plead that there are meaningful benchmarks, that there's a sound basis for comparison. And here, again, where the district court found that that broke down is on the for less prong, meaning comparing what the other plans paid to what this plan paid. And the breakdown, and this is what we believe that the plaintiff waved below, is that the district court correctly points out that the information that the plaintiff chose to rely upon, the 404A5 disclosures, only disclose what was actually charged to the participants for the record-keeping fee. It doesn't disclose what the plan overall paid for record-keeping. The problem with that is the theory of liability here is that the plan paid excessive record-keeping fees. So to point to a disclosure that, by definition, is inadequate because it only discloses what was charged through to the participant, does not set for the court a meaningful basis of comparison, a meaningful benchmark. Counsel, can't you multiply the number of participants times that number and come up with something? No, Your Honor. Why can't you do that? Because they have to disclose the number of participants, don't they, three or four places? Because, Your Honor, the 404A5 disclosure is only providing a sliver of the amount of record-keeping fees that were paid to the service provider. If you times that sliver by the number of participants, you only have a sliver of the overall. It doesn't change the sliver problem, if that makes sense. Do they get closer to being more than slivers if you do that? No, it doesn't. It will always be a sliver, and it's because of the using that disclosure statement for the purpose that the plaintiffs purport to use it for here is defective because it doesn't answer the question of what the theory of liability is here, which is what the plan paid for record-keeping services and whether that was excessive. All that disclosure does is disclose what was actually charged through to the participant. And what the district court judge did here, which is perfectly appropriate, is it looked at the information that is publicly available that this court has relied upon in other cases, particularly Matusik and Barrett, to analyze whether or not the allegations are plausible. That's the 5500. It's the participant disclosure, which the judge looked at here. And the judge here said, as I look at those documents, it's clear to me that what you're relying upon is only presenting a sliver of the picture, and therefore I don't have an apples-to-apples comparison. Your Honors, the issue has been broached that the district court, and again, I agree, I'm not going to belabor it, but the district court clearly applied the proper standard in her analysis here. And her reliance upon 5500s that's been criticized by the plaintiff was expressly adopted by this court in Matusik. In Matusik, the complaint in that case did not rely upon 5500s, and the court in Matusik, this court, relied upon the 5500s to dissect whether or not the complaint there plausibly alleged a cause of action. That, in and of itself, where we are right now, Your Honors, is enough to affirm the opinion and the ruling of the district court judge. If this court wishes to go beyond that and get to the district court assumed that the comparator plans, the five comparator plans here were meaningful comparators, there is a dispute as to that issue as well, and that goes to the Barrett side of this court's holdings. And in Barrett, the court said, hey, it matters, the services that were provided to a plan, and it matters the services that were provided to the comparators. I'm not up here to suggest that it needs to be the exact same services, but it needs to be substantially similar enough such that this court can make an inference from that information. Well, counsel, if you compared to a lot of plans, they have six. But if you compared it to some scientifically apportioned some way, derived, was that what the Supreme Court was getting at in the Hughes v. Northwestern case? Well, in Hughes v. Northwestern, what the Supreme Court had in mind was very important, which is that the court must give due regard to the competing considerations that are presented to the plans and must give due regard to their decision-making in executing the difficult fiduciary function. And here we don't. Yes, but they went ahead to let the case go on, correct? They did, Your Honor. Yes. But they were addressing a very specific and discreet point in that case, which was in the Seventh Circuit, there was effectively a dispositive presumption that if you gave participants a diverse array of investment options, that that resulted in immunization from an allegation that you breached your fiduciary duties. And the Supreme Court hit the reset button on that and said, we don't agree with that notion. But the paragraphs at the very end are very critical, which they do say, you know, it is important to recognize that we do need to give due regard to the competing considerations that are presented to plan fiduciaries when they are engaging real-time in the difficult decisions that are before them. In this situation, we don't need to look at the myriad of other plans that may be out there in their services. We know from the Form 5500s here, there's a disparity in the codes, the service codes that are represented on the 5500s. I don't want to bore you with all that, but that's exactly what the court honed in on in Barrett and said, you know, that disparity needs to be accounted for for there to be a meaningful comparison here. And in this situation, it wasn't accounted for. And this is important. In Barrett, there were allegations of fungibility. There were allegations that mere allegations that the services don't matter. It doesn't impact the price for large plans. Paragraph 80 of the Barrett complaint for this court contained those allegations. It was not enough to get past a motion to dismiss. This court went to the 5500s and analyzed the service codes and made a determination that the plaintiff had not adequately alleged that the services were sufficiently similar to state a cause of action. Your Honors, I would just like to address if you believe it's important, with the fact that the district court dismissed here with prejudice, both because the plaintiffs did not, on the basis that the district court dismissed, did not ask for a leave to amend on that basis, number one, and number two, did not properly follow the rules to request amendment. And that is consistent with, I believe, the circumstances once again in Barrett. So, Your Honors, I'm not going to sit up here and talk just to hear myself talk. I think I've covered everything I wanted to cover today. I will conclude by saying that this is not a factual enhancement case. This is not a braiding buzzword of saying that the plaintiff needs to disprove alternate explanations. This is application of the meaningful benchmark standard that this court has adopted. And to overrule the district court here would require this court to go counter to Matusik and go counter to Barrett to effectively walk it back. This court should not do that. It's on the right side of the law in terms of requiring a plaintiff to make plausible allegations under Twombly and Iqbal of a fiduciary breach, and the way to do that is to marshal the information that's available, not myopically shield it from a court, publicly available information in 5500s and disclosures that this court has looked at in the past to answer this very question. This court should do the same. Thank you, Your Honors. Thank you for the argument. Mr. Segunda. Your Honors, Matusik is not to the contrary. It involved a classic apples to oranges mismatch. Industry-wide averages for a typical bundle versus Merrill's total compensation. Here we are alleging excessive record-keeping compensation and comparing it to record-keeping marketing prices, which is the exact service that is at issue. Our allegations isolate record-keeping, which is a discrete, commonly bundled service priced per participant, and we allege the fiduciaries failed to use readily available competitive options in that record-keeping market. So we are not claiming total compensation was excessive based on a basic record-keeping benchmark. We are alleging the record-keeping compensation itself was excessive, which is a proper like-for-like comparison. With regard to Barrett, different grocery baskets. We do not have different grocery baskets here. Barrett dismissed because the record showed materially different bundles and the complaint lacked allegations that services were sufficiently similar to make comparators valid. Yes, they mentioned fungibility, but they didn't back it up with the empirical non-conclusory allegations that we have in our case, which I would suggest the court review paragraphs 55 through 63. Here, appellants allege fungibility, commoditization, in mega-plan bundled RKA and use 4A-5 in audited financials compare the same category of basic record-keeping and administration costs. Your Honors, we believe the case should be remanded because the district court did apply a novel high bar standard and added a disputed Form 5500 clause. We are not asking this court to decide who has the better accounting. I see my time is up, Your Honor. Thank you very much for your time today. We ask that the case be reversed and remanded. Thank both counsel for their briefing and arguments in this case. Case 24-3475 is submitted for decision to the court. Counsel are excused. Ms. McKee.